**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EILEEN MCAFEE,
<u>Plaintiff-Appellee,</u>

v.

SELINA DEALE, in her individual
capacity,
<u>Defendant-Appellant,</u>

and

ANTHONY ROMANELLO, in his
individual capacity,

No. 99-2361

<u>Defendant,</u>

and

JERRY A. OLIVER, Chief of Police
for the City of Richmond Police
Department; L. CHESTER BRAZZELL,
Director of the Department of
Human Resources for the City of
Richmond; CALVIN JAMISON, City
Manager for the City of Richmond,
<u>Parties in Interest.</u>

EILEEN MCAFEE,
Plaintiff-Appellee,

v.

ANTHONY ROMANELLO, in his
individual capacity,
Defendant-Appellant,

and

SELINA DEALE, in her individual
capacity,

                                No. 99-2370

Defendant,

and

JERRY A. OLIVER, Chief of Police
for the City of Richmond Police
Department; L. CHESTER BRAZZELL,
Director of the Department of
Human Resources for the City of
Richmond; CALVIN JAMISON, City
Manager for the City of Richmond,
Parties in Interest.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-98-295)

Argued: June 7, 2000

Decided: August 24, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and
Robert R. BEEZER, Senior Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

_____

2

Vacated and remanded by unpublished per curiam opinion. Senior Judge Beezer wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** John Adrian Gibney, Jr., SHUFORD, RUBIN & GIBNEY, P.C., Richmond, Virginia, for Appellants. Gerald Thomas Zerkin, GERALD T. ZERKIN & ASSOCIATES, Richmond, Virginia, for Appellee. **ON BRIEF:** Christina E. Kearney, SHUFORD, RUBIN & GIBNEY, P.C., Richmond, Virginia, for Appellant Deale; William Gray Broaddus, Thomas E. Spahn, Tara N. Mora, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellant Romanello. Melanie H. Moore, GERALD T. ZERKIN & ASSOCIATES, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

This case presents the question of whether Selina Deale and Anthony Romanello, public officials connected with the City of Richmond (Virginia) Animal Shelter, are entitled to qualified immunity in this action filed by Eileen McAfee, a member of the "Save Our Shelter" organization, who sued the officials as a result of several confrontations that she had at the Shelter. In her complaint, McAfee alleged that she had been banned from the Richmond Animal Shelter without legal justification but in retaliation for her filing a state defamation suit against the officials and for criticizing the Shelter, in violation of her First Amendment rights. She also alleges that Deale and Romanello discriminated against her for exercising her First Amendment rights, in violation of the Equal Protection Clause of the Fourteenth Amendment. Deale and Romanello assert that their actions in exclud-

3

ing McAfee from the Shelter on three separate occasions for being disruptive at the shelter were justified and that they violated no clearly established constitutional right. The district court denied the officials' motion for summary judgment based on qualified immunity because it found that "there are genuine issues as to material fact."

While the details of the incidents involved in this case may be somewhat disputed, the parties do not dispute the essential facts material to whether Deale and Romanello violated a clearly established constitutional right of which a reasonable person in their position would have known. See Wilson v. Layne, 526 U.S. 603, 614 (1999); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, we vacate the district court's orders denying Deale and Romanello qualified immunity and remand with instructions to enter judgment in favor of the officials.

I

Eileen McAfee was a member of Save Our Shelter ("SOS"), an organization formed in response to negative publicity about conditions at the City of Richmond Animal Shelter (the"Shelter"). The mission of SOS was to monitor conditions at the Shelter, bring problems at the Shelter to the attention of city officials and the public, and facilitate the adoption of animals from the Shelter. Selina Deale was the Superintendent of Animal Control in charge of the Shelter, and Anthony Romanello, the Deputy Director of the Richmond Health Department, was Deale's supervisor.

McAfee was removed from the Shelter on three occasions in 1998, as a result of confrontations between her and the Richmond Animal Shelter officials. She was first removed from the Shelter on January 15, 1998, when she interfered with Deale's discussions with a patron, accusing Deale of being a liar. On this date a man came into the Shelter looking for his lost dog, and Deale told the man that the only dog in the isolation and euthanasia rooms was a beagle. McAfee intervened in the conversation, calling out to Deale in the presence of the patron, "Is that true that the only dog in there is a beagle? You know, you've lied before." Deale ordered McAfee out of the Shelter.

Although McAfee returned to the Shelter on subsequent occasions, she was again removed from the Shelter on March 10, 1998, for being

4

rude and disruptive. When McAfee's counsel contacted the city attorney's office about whether the ban was permanent, the city attorney advised McAfee's counsel that she had not been banned permanently but could return as long as she complied with the Shelter's rules. McAfee did return to the Shelter again on March 31 and April 11.

But on April 14, 1998, McAfee was again asked to leave the Shelter when she interfered with the Shelter's business. When a patron dropped off an abandoned animal to the Shelter, one of McAfee's colleagues at SOS told the patron not to leave the dog because the Richmond Animal Shelter employees would kill it. When the Shelter officials asked McAfee's colleague to leave, McAfee began cross examining a security guard in a loud and disruptive voice. The security guard then told McAfee, "You have to leave." Again, the ban was not permanent, and representatives of SOS have continued visiting the Shelter.

McAfee sued Deale and Romanello for interfering with McAfee's First Amendment rights. In part, McAfee's complaint was based on her allegation that she had been banned from the Shelter because she filed a defamation suit against Shelter officials in state court in February 1998. In that action, McAfee alleged that Deale and Romanello had defamed McAfee by describing McAfee to others as a racist and a dishonest person. This allegation was based on statements made in two internal memoranda sent by Deale to Romanello that Romanello later distributed to city officials, Shelter workers, and a reporter at the local newspaper. Specifically, the memoranda recounted that (1) in 1997, McAfee had made an allegedly racist comment to another member of the public while at the Richmond Animal Shelter, and (2) McAfee had removed a drain grate from the floor of the Shelter in order to photograph it as having been left open and thereby to depict a condition hazardous to the safety of the animals. McAfee alleged in the state defamation suit that Deale and Romanello had written and circulated the memorandum for the purpose of "discrediting and destroying" McAfee's reputation and that McAfee had suffered "humiliation and other significant emotional injury" as a result. During discovery in that action, however, McAfee admitted that she had indeed removed the grate from the floor drain in order to photograph it as being open, and she also conceded that Deale believed her statements about McAfee's "racial intolerance" to be true. Consequently,

5

McAfee dismissed her defamation suit pursuant to Virginia's nonsuit statute and did not refile it.

In this action, McAfee alleges that Deale and Romanello's exclusion of her from the Shelter on March 10 and April 14 was in retaliation for her filing the state defamation action. She also contends that she was excluded because she generally criticized and monitored the Shelter. She does not, however, point to any evidence suggesting a causal link between these activities and her exclusion from the Shelter, nor does she identify any circumstance in which her right to speak out against or criticize the Shelter was interfered with.

II

In determining whether public officials enjoy qualified immunity, we must "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson, 526 U.S. at 609 (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)). The Court in Wilson went on to explain that the constitutional right is clearly established for purposes of qualified immunity when the "contours of the right[are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 615. The unlawfulness of the official's action must be apparent to him. Id. And to reduce this objective inquiry to "the appropriate level of specificity" for deciding this case, we must determine whether a reasonable Shelter official"could have believed" that his conduct in excluding McAfee from the Shelter "was lawful, in light of clearly established law and the information the [officials] possessed." Id.

In the context of the information known to Deale and Romanello, we believe that it was not unlawful for them to have ushered McAfee from the Shelter on the three occasions when they were confronted with what they perceived was rude and disruptive conduct by McAfee. See Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999) (holding that a parent's First Amendment rights were not violated when he was excluded from public school property after continuing a pattern of verbal abuse and threatening behavior toward school officials).

6

McAfee argues that her exclusion from the Shelter was in retaliation for her filing the state court defamation action. There is, however, no evidence in the record -- which was fully developed in connection with the summary judgment motions -- to support that claim. Indeed, the first incident when McAfee was banned from the Shelter preceded her filing of suit in state court. Moreover, there is no suggestion that McAfee's right to file her defamation suit or to prosecute it was in any way interfered with.

Likewise, in connection with McAfee's assertion that her exclusion from the Shelter was based on her criticisms of the shelter, she has provided no evidence suggesting a causal link between her exclusion from the Shelter and any statement, comment, or speech that she made. And again she has not alleged that she was denied the right to make such criticisms.

In short, we conclude that reasonable public officials, in the positions of Deale and Romanello, would not believe that they were violating McAfee's constitutional rights when they excluded her from the Shelter in response to what they perceived was her abusive conduct on three separate occasions. Indeed, such conduct violated the Shelter's published regulations, which included:"The public is expected to refrain from insolent, profane, or derogatory language and shall be courteous and civil in their dealings with the staff."

Accordingly, we vacate the district court's orders denying Deale and Romanello qualified immunity and remand the case with instructions that judgment be entered in favor of these officials on the basis of qualified immunity.

IT IS SO ORDERED

BEEZER, Senior Circuit Judge, dissenting:

I respectfully dissent.

In this case, as in so many others, the parties view the facts quite differently. A court is not permitted at the summary judgment stage to determine which version of the facts is more credible. The court's

opinion, however, does just that and in so doing, fails to recognize that the record presents genuine issues of material fact.

In each of the three instances in which McAfee was removed from the animal shelter, the court's opinion recounts the facts from Deale and Romanello's perspective. Thus, the court's opinion is able to assert that McAfee was excluded in response to her"rude and disruptive" and "abusive" conduct. Only then can the court's opinion conclude that Deale and Romanello are entitled to qualified immunity.

It is well established, however, that the facts <u>must</u> be viewed in McAfee's favor. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 254 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). When taken in the light most favorable to McAfee, the record contains facts which support a finding that McAfee did not act in an abusive, disruptive, or rude manner and that there was thus no valid cause for her expulsion from the animal shelter. A reasonable juror could also find that McAfee was banned indefinitely from the animal shelter and that McAfee's protected First Amendment activities were a"substantial" and "motivating" factor in the decision to impose that ban. <u>See Mt. Healthy School Dist. v. Doyle</u>, 429 U.S. 274, 287 (1977).

I am unable to conclude at this stage that Deale and Romanello are entitled to qualified immunity. I would affirm the district court and remand the case for trial.